HEARD NOV. TERM, 1871.

## McGowan *vs.* Lowrance.

Where the verdict is rendered by direction of the Court, a new trial will be granted if it appears that the right of the party, in whose favor it was rendered, did not depend wholly on the decision of a question of law, but involved the determination of some matter of fact upon disputed evidence, or upon some conclusion of fact to be drawn, or if it appears that some proposition of law, material to the question, was erroneously solved.

The Circuit Judge having erroneously instructed the jury that the decree and other proceedings under a certain bill in equity amounted to an election to take under a certain deed, new trial granted.

Before MELTON, J., at Richland, February Term, 1871.

Action by Olivia McGowan, Henrietta McGowan, and six others, plaintiffs, against Rufus N. Lowrance, and two others, defendants, to recover possession of the lot on Richardson street, in the city of Columbia, hereinafter mentioned.

The case was as follows :

On the 15th of January, 1817, Sarah Benson and others executed a deed of release, herein called the Benson deed, whereby, in consideration of $1,010 to them paid by John D. Brown, they conveyed to Brown, and his heirs, the lot in dispute in this action, in trust: (1.) for the use of Brown for life, with power to sell and convey the

same when he may think it best for the use of his wife and children; and, (2.) "after the death of the said John D. Brown, the said property to be equally divided between the said wife and children then living" of the said John D. Brown, the issue of a predeceased child to take the parents' share.

John D. Brown was the owner of considerable other property, both real and personal, and on the 25th of April, 1832, he made his last will and testament, whereby he devised the lot on Richardson street to his son, John H. Brown, and his daughter, Sarah P. Brown, in equal moities, with such limitations that if one should die without issue the other should take the whole for life, with remainder to his or her children in fee. The will contained separate devises and bequests to testator's wife, Sarah Brown, his daughter, Mary Ann Harvey, wife of William E. Harvey, and his daughter, Martha M. Pasmore, wife of Metcalf Pasmore, also bequests of personalty to John H. Brown, Sarah P. Brown and John Brown Pasmore, a grandson of testator. The devise to Mary Ann Harvey was of a house and lot on Assembly and Taylor streets, in Columbia, to have and to hold the same to her sole and separate use for life, with remainder to her children, should she leave any, if not, then to the "other children or issue" of testator. The residue was devised and bequeathed to testator's wife. All the other devises and bequests were specific. The testator died in 1832, leaving his said will of force, and his wife, children and grandson above named him surviving.

John H. Brown died in 1833, leaving no issue, and in the same year Sarah P. Brown intermarried with Henry N. McGowan.

In 1836 William E. Harvey and Mary Ann, his wife, filed a bill in the Court of Equity for Richland, against Henry N. McGowan and Sarah P., his wife, and Sarah Brown, wherein they stated that the house and lot on Assembly street, devised by the testator to the plaintiff, Mary Ann, and several slaves, were held by the testator on trusts similar to those on which he held the lot on Richardson street; that the plaintiff, William E. Harvey, had had possession of the house and lot on Assembly street for upwards of ten years, under an agreement to purchase the same from the testator, and that he had paid nearly the whole of the purchase money; that the testator died in June, 1832, leaving a considerable estate, real and personal, and also leaving his wife and children (above named) him surviving, and that he left his last will and testament (herein before mentioned) "by which he hath assumed to convey and dis-

tribute to various devisees and legatees not only his own property, but that also which he held in trust as aforesaid for his wife and certain of his children, including the interest of your oratrix, Mary Ann Harvey. That by the dispositions of the said will, your oratrix is not put upon an equal footing of the rest of his family, and is, therefore, unwilling to take under the said will, but claims to have the benefit of the provisions of the said trust deed. Now, your orator and oratrix are unwilling to disturb the family arrangements contemplated by the said John D. Brown, further than is necessary to secure their just rights; and in order to promote peace and harmony in the family, they have filed this bill, in order, in an amicable manner, to adjust the rights of the complainants in relation to those members of the family of the said John D. Brown with whom their rights may come in conflict. Complainants are desirous that the house and lot on Assembly street should be sold and the proceeds invested in slaves, to the same uses that are expressed in the will of the testator in relation to the said house and lot, to which your orator, William E. Harvey, though now holding the said house and lot in his own right, by an indefeasible title, hereby expresses his assent."

The prayer was "that your orator and oratrix may have such portion of the settled estate allotted to them, by sale or otherwise, as may equalize them with the other children of the said John D. Brown, and be a fair equivalent for the property secured by the said trust deed, which they thus agree to give up; that the house and lot on Assembly street may be sold and the proceeds invested in slaves, upon the like uses as are contained and set forth in the said will in relation to the said house and lot, and that your orator and oratrix may have such further and other relief in the premises as to your Honors may seem meet."

By the written consent of the parties, filed with the bill, the following decree, dated January 7th, 1837, was made in the case:

"By consent of parties, it is ordered and decreed that Henry N. McGowan and Sarah P. McGowan do pay to William E. Harvey, upon the trusts hereinafter mentioned, the sum of two thousand and fifty dollars; and that this sum, when paid, shall be a full discharge of the claims of William E. Harvey and Mary Ann Harvey upon Henry N. McGowan and Sarah P. McGowan, and upon the estate of John D. Brown, for their share of all the property held by said John D. Brown in his lifetime, in trust for his wife and Mary Ann Harvey and others of his children, except that the title of the said

William E. Harvey and his wife to the house and lot in Columbia, wherein they now live, at the corner of Taylor and Assembly streets, shall be confirmed to them, as well as all other interests secured to them by the will of the said John D. Brown; and the same are hereby declared to be vested in the said William E. Harvey and his wife forever. It is further ordered and decreed that the three story brick building on Richardson street, and the lot whereon it is situate, claimed by the said Henry N. McGowan and his wife, under the will of the said John D. Brown, which house is now occupied by Wm. Barkley and Wm. Beard as tenants, be sold by the Commissioner of this Court on the first Monday in February next for cash; and that out of the proceeds of said sale, the said sum of two thousand and fifty dollars be paid by the Commissioner to William E. Harvey, in trust for his wife, Mary Ann Harvey, and the present and future issue of the marriage, with power to the said William E. Harvey to dispose of the same, with the consent of his wife in writing. The costs of this suit to be paid out of the sales aforesaid, and the balance of the purchase money to be paid to Henry N. McGowan in trust for his wife, Sarah P. McGowan, and the present and future issue of the marriage, with power to the said Henry N. McGowan to dispose thereof, with the consent of his said wife in writing, and subject to the conditions and limitations annexed to the devise of the said brick house by the will of the said John D. Brown. It is further ordered and decreed that the house and lot at the corner of Taylor and Assembly streets, occupied by the said William E. Harvey, be sold by the Commissioner of this Court for cash, on the first Monday in February next, or some subsequent saleday; and that the proceeds of the said sales be paid over to the said William E. Harvey, to be invested in slaves, and that the said slaves shall be held by him subject to and upon the same trusts and limitations as are contained and expressed in the will of the said John D. Brown in relation to the said house and lot."

The lot on Richardson street was duly sold by the Commissioner in Equity under the above decree, and a conveyance executed to the purchasers. The defendants hold under the title conferred by that sale and conveyance.

Sarah P. McGowan died in 1862, leaving six children, who, with the husbands of two of them, are the plaintiffs in this action. They claimed under the limitations of John D. Brown's will, which, upon the death of John H. Brown, vested the estate in the premi-

ses in Sarah P. Brown for life, and after her death in her children. Olivia McGowan and Henrietta McGowan, two of the plaintiffs, were born before the bill in Equity, hereinbefore mentioned, was filed, but were not made parties thereto.

The plaintiffs gave some evidence tending to show that before the bill in equity was filed, all the devisees and legatees of John D. Brown had accepted the provisions of his will, and thereby, as was contended for plaintiffs, elected to take under the will and against the Benson deed.

The case was tried upon the following question, reduced to writing, and submitted to the jury as the only issue to be determined by them: "Is the title to the premises in dispute, described in the pleadings, in the plaintiffs in this action?"

His Honor the Circuit Judge ruled that the bill in equity, decree, and other proceedings thereunder, amounted to an election by the parties to that bill, to take under the Benson deed and against the will of John D. Brown; and he instructed the jury that, as the plaintiffs had no estate under the limitations of the Benson deed, they had failed to show title in themselves, and the verdict should be for defendants. To this ruling, and other rulings unnecessary to mention, the plaintiffs excepted.

The jury found for the defendants, and judgment having been entered thereon, the plaintiffs appealed therefrom to this Court.

*McMaster & Le Conte*, for appellants:

I. The proceeding in equity, under which the property was sold, did not establish an election by the parties concerned to take under the deeds of Benson and others, in derogation of the will:

(*a.*) Because the acceptance of the benefits, and acquiescence in the provisions, of the will by the parties, amounted to an election by them to take under that instrument. This election was at law and in equity a satisfaction of their rights under the deed, and could only be retracted, if at all, upon grounds of equity, shown in proceedings had for the purpose. A consent decree, taken without the privity of the remaindermen, was wholly insufficient to effect such retraction of their original election.—Fearne on Cont. Rem., 28, 208; 2 Hill, 324; 4 Kent, 221; *Van Lew* vs. *Parr*, 2 Rich. Eq., 328; 3 Rich. Eq., 359; 9 Rich. Eq., 56; Story Eq. Jur., §§ 1075, 1096; 2 Roper on Leg., 1566; 1 Swanston, 383 and note; *Buist* vs. *Dawes*, 3 Rich. Eq., 301; *Hall* vs. *Hall*, 2 McC. Ch., 306; *Buttrick* vs. *Broadhurst*, 3 Bro. C. C., 88; 2 Vesey, Jr., 696.

(*b.*) Because the proceedings were not designed for any such purpose; but, on the contrary, it is manifest from the record that Mrs. McGowan and Mrs. Brown expressly continued their election under the will, and that the property was sold under the title of Mrs. McGowan, derived from the will, to satisfy the terms of an agreement by which Mr. and Mrs. Harvey had released all their claims upon the estates; and this construction alone is consistent with the interests of the parties, their good faith in the transaction, and the settled principles of the Court of Equity.—2 Phil. Ev., 303; Life Tables in Oliver on Conveyancing, 89; 2 Ves., Sr., 61; *Ward* vs. *Baugh*, 4 Ves., 623; Bright on Husband and Wife, 474; 2 Story Eq. Jur., §§ 1083, 1084; *Coke* vs. *Turner*, 14 Sim., 493; *Hogeboom* vs. *Hall*, 24 Wend., 146; 1 Des., 498.

II. If the parties originally acquiesced in the provisions of the will with a full knowledge of their rights, their elections could not afterwards be retracted—and whether they so elected or not, was a question of fact for the jury.—*Roundel* vs. *Currer*, 1 Swans., 383, note; *Coker* vs. *Farewell*, 1 Swans., 390, note; 2 P. W., 563. Or if the question was one of mixed law and fact, it should still have been left to the jury.—*Lowndes* vs. *King*, 1 S. C., 102; Code, §§ 284, 285.

III. Since a renewal of the original election of the parties could only be effected by the decree of the Court, and the validity of such decree depended upon the good faith of the parties, the question of fraud was most material, and should have been submitted to the jury.—*Dutchess of Kingston's Case*, 11 St. Tr., 262; 1 Starkie on Ev., 249.

IV. Even if the proceedings in equity had established a valid election of the parties under the Benson deed, still the plaintiffs had a clear interest in the property not affected by the decree:

(*a.*) Because, under the deed, the widow and children of J. D. Brown took only estates for life—representing each ONE-FIFTH shares of the life estate in the premises. The fee simple in the property was vested by the deed in Brown and his heirs. The plaintiffs, as the devisees of Brown, held the reversion in fee, and upon the death of the life tenant were entitled to the possession of the property.—2 N. & McC., 383; 4 McC., 442, 476; Sanders on Uses and Trusts, 122; 4 Kent, 354.

(*b.*) Because, even if the parties to the proceedings had taken absolute estates by said deed, still they could represent only THREE-FIFTHS of the fee in the property, and the plaintiffs were entitled

to the remaining TWO-FIFTHS; beneficially, as to the life estate therein; and legally, as to the remainder in fee. Their title was not barred by the decree; and whether legal or equitable, should have been enforced by the Court.—2 Story Eq. Jur., § 1084, and authorities cited above; 1 Story Eq. Jur., § 656; 4 Rich. Eq., 492; 7 Barb., 226; 1 Starkie on Ev., 217; Code, §§ 165, 166; Van Sanf. Eq. R., 107; 7 How., 423, and 2 Kern., 336.

V. If the parties made their election under the will, the life-estate alone was conveyed to the purchaser at the sale, and the estates in remainder continued unaffected by the decree :

(a.) Because Mrs. McGowan's life interest in the property alone was ordered to be sold by the decree.

(b.) Because, even if the decree had been intended to carry an absolute estate, it was the act of the parties, and not the act of the Court, and could only pass such estate as the parties were capable of conveying by their own deed.—2 Rich. Eq., 328; 3 Rich. Eq., 359; 9 Rich. Eq., 56.

(c.) Because, even if the decree had the force of a solemn judgment of the Court, still it could not affect the remaindermen, who were not privies, as their estates were VESTED.—7 Rich. Eq., 100; 1 Jarm. on Wills, 393, and note; Williman vs. Holmes, 4 Rich. Eq., 492; nor, if CONTINGENT, as the remaindermen were in esse, and within the jurisdiction of the Court.—Story Eq. Jur., § 656; Story Eq. R., 144; Perk. Ch. R., 314; 1 Sch. and Lef., 210; 9 Vesey, 63; Cheves Eq., 33; 2 Rich. Eq., 333; 3 Rich. Eq., 1; 4 Rich. Eq., 492; Vail vs. Vail, 7 Barb., 226. And in fact the Court of Equity looks not so much to the technical character, as to the value of the interests.—8 Rich. Eq., 269.

(d.) Because the decree was wanting in all the formalities requisite to bind infants and remaindermen.—Bayly vs. Boyce, 5 Rich. Eq., 192; Pearse vs. Killian, McM. Eq., 231; 6 Rand., 594; 1 Perk. Ch. R., 218. '

VI. The title of the plaintiffs, one of whom is still a minor, has in no way been affected by the lapse of time.—2 Phil. Ev., 321, 365; McC. Ch., 317; McM. Eq., 474.

Bachman & Waties, contra :

I. Plaintiffs had no interest in this property, save such as they may have acquired by the decree of 1837. That decree ordered the unconditional sale of the property. The property sold was not the property of John D. Brown, plaintiff's ancestor—he only held

a life estate in it. At his death, it became the absolute property of his wife and children, under the deed from Benson. He did, however, attempt to dispose of it under his will, and thereby raised among his devisees and legatees the question of election—whether they would take under the will, or under the deed. Until an election was made, any interest of these plaintiffs was wholly undetermined—was purely contingent.

II. This, then, was clearly a case for election; and the main question, as presented by the exceptions, is, was there an election? Of this there can be no doubt.

There was no election prior to the proceedings in Equity. If there was, plaintiffs must prove it. " The plaintiff who desires the Court to deprive defendant of his legal estate, is bound to establish an indisputable title: he must show that testator had power to devise the estate, or that defendant elected to abide by his will." *Dillon* vs. *Parker*, 1 Swans., 385, text.

" It seems difficult to prove all the circumstances necessary to constitute an election." A party should be apprised of the necessity of electing. " A party bound to elect is entitled first to ascertain the value of the funds." Not bound to elect until all the circumstances are known.—Id. 379–381, note *o*.

An election under misconception is not conclusive.—Id., id.

To prove a will, and enter on the estate devised, is not sufficient. Id. 380, text.

Having suffered a recovery of an estate is not of itself to be considered an election.—*Welby* vs. *Welby*, 2 Ves. & B., 199.

There is no evidence that these parties elected to take under the will of John D. Brown. All that has been proved is, that they went into possession, or remained in possession for a time, of what was given by the will. That they, or at least Harvey and his wife, *did not then intend to elect*, is proved by their subsequent acts.

III. What acts of acceptance or acquiescence constitute an implied election, must be decided rather by the circumstances of each case than by any general principle. The questions are, whether the parties acting or acquiescing were cognizant of their rights; whether they intended election; whether they can restore the individuals affected by their claim to the same situation as if the acts had never been performed; or whether (on the principle, *interest reipublicæ ut sit finis litium*,) these inquiries are precluded by lapse of time.—Id., note a, 382.

The unequivocal acts of the parties in the proceedings in equity,

establish conclusively an election *then* to take under the deed of Benson; and the 'great lapse of time' since then should 'preclude all enquiries.'

IV. The doctrine of election is purely equitable.

The consequence of election is *compensation,* not *forfeiture,* being founded on principles of Equity.—1 Jarm., 375; 1 Swan., 442.

" Compensation is made for that which the devisee retains of his own, contrary to the design of the will, but (if necessary) to the extent of that which he derives from the testator. The former is the subject for which compensation is given; the latter the fund from which it is taken.— *Gretton* vs. *Howard,* 1 Swan, 430, note d.

" Courts of Equity assume jurisdiction to sequester the benefit intended for the refractory donee, in order to *secure compensation to those whom his election disappoints.*" The surplus after compensation does not devolve as undisposed of, but is restored to the donee : *the purpose being satisfied for which alone the Court restrained his legal right.*—Id., 441, note.

Of course the consequence of election in this case was forfeiture, and not compensation; because the will prescribed forfeiture as the condition. But suppose the disappointed devisees had declared themselves satisfied with other conditions—was the Court bound to declare the benefit forfeited ?

Suppose arrangements were made between the parties avoiding the forfeiture as to all, or waiving it as to the " refractory devisee," and this adjustment was sanctioned by the Court, would it not be binding ?

This much at least is certain : That their legal rights were claimed by the parties to the proceedings in equity, or by some of them, and their claims were acquiesced in by all. If these present plaintiffs had or have any rights or claims, they must look for compensation, not to this property, but to the " fund derived from the testator." Their right is of course denied.

V. The question of election is rather one of law than of fact; it is sometimes both. Questions of fact may be decided by the Judge or sent to a jury. The question of election, if doubtful, may be sent to a jury.— *Roundell* vs. *Currer,* 1 Swan, 382, note; 3 Ves. & B., 42.

In *Dillon* vs. *Parker,* 1 Swan., 359, and *Gretton* vs. *Howard,* id., 409, the whole doctrine of election is elaborately discussed.

Mere inadequacy of price, however great, no ground to set aside sale by Sheriff or Commissioner.— *Coleman* vs. *Bank,* 2 Strob., 285; *Holmes* vs. *Holmes,* 3 Rich., 61.

In an action of trespass to try title, plaintiff must recover on strength of his own title. "He must connect himself with oldest grant of the *locus in quo*, or trace title to a common ancestor."—1 McM., 450; 5 Rich., 545; 1 Tr. Con. R., 90.

The purchaser at the Commissioner's sale took his estate by the decree and under the deed.

There was no question of fraud in the case, either as to the election, or proceedings in equity, or as to the sale.

As to power of Court of Equity to sell estates of infant remaindermen, &c.—*Bofil* vs. *Fisher*, 3 Rich. Eq., 1.

April, 24, 1872. The opinion of the Court was delivered by

WILLARD, A. J. The verdict below having been rendered by direction of the Court, if it shall appear that the right of the defendants to such verdict did not depend, wholly, on the decision of a question of law, but involved the determination of some matter of fact, upon disputed evidence, or upon some conclusion of fact to be drawn, or, if it appears that some proposition of law, material to the question, has been erroneously solved, then there must be a new trial.

John D. Brown, in his life time, held the land in question, under a deed from Sarah Benson and others, by which he took an estate in fee, in trust, for the use of himself for life, and after his death, "the said property to be equally divided between his wife and children then living, the child of a deceased child to take his parent's share." He took, also, by the same deed, power to sell, at discretion, for the use of his wife and children, but as this power was not exercised during his life time, it has no important bearing on the present question.

John D. Brown, by his will, assumed to dispose of this property, as if held discharged from all trusts whatever, and, placing it with his real and personal estate, devised and bequeathed the whole to his wife and children, with the exception of a bequest to a grandchild. The devises of the real estate were all specific, except the residuary devise, each child taking a designated portion of the realty, and Sarah, his widow, in addition to a specific devise, the undevised residue of the realty. Under these devises, the land in suit went in equal moieties to his son John H. and his daughter Sarah P., for life, with remainders to their children, surviving their parents, and cross remainders, in the event of either dying without issue living.

The other devisees, including Mary A., the wife of Wm. E. Harvey, took other portions of his real estate, about which there is no dispute.

It is evident that a failure of the devise to John H. and Sarah P., in consequence of want of power to devise, must, as affecting their children, the present plaintiffs, defeat the scheme of equal division intended by the will.

There is evidence tending to show that all of the devisees accepted the provisions made by the will, and, prior to the filing of the Harvey bill, were severally in the enjoyment of the property devised. How far such acceptance and occupation may have been decisive upon the question of an election to take, according to the provisions of the will, complete and binding previous to the filing of the Harvey bill, depends upon a state of facts not yet ascertained, for the reason that the direction given to the case, by the ruling of the Circuit Court, precluded an inquiry into these facts as bearing on the question of an election antecedent to the filing of the Harvey bill.

Two questions arise at this stage of the inquiry—had the children of Sarah P. any rights at the time of the filing of the Harvey bill, and if so, were these rights cut off by the proceedings and decree under that bill.

If they had any rights, they were derived under the will, and consisted in the right of issue living at the death of Sarah P. to take, on that event, a fee by way of remainder.

It is not necessary, now, to adjudicate, finally, the question of the possession of such rights, for, as far as the present verdict is concerned, unless we can, as matter of law, negate their existence, the verdict must be set aside, and the question of right determined upon a new trial.

It may, however, be observed that there are two grounds on which it may be contended that such rights rest: first, that J. D. Brown held, though as trustee, the fee of the land; and, second, that the parties entitled as beneficiaries, under the trusts, had accepted the provisions of the will, and thereby lost the right to subject the legal estate to the uses and trusts originally impressed upon it. As the present plaintiffs were not parties to the Harvey bill, they cannot be affected by it, as regards any right they may have had at the filing of that bill.

The claim of the defendants, in respect to the operation and effect of the decree in that case is, that it operated as an election to take

under the Benson deed, by which all persons are bound, whether parties or otherwise.

If that decree could have such operation and effect there would still be an insuperable objection to allowing to the defendants the benefit of that effect as mere matter of law, for the question would still remain, whether at the filing of that bill the parties to it were in a position to make such an election, and the determination of this question would involve a question of fact, whether they had already made an opposite election and become bound by it.

The most serious objection to the ruling has relation to the conclusion, that the decree and proceedings under the Harvey bill were in themselves an election to take under the Benson deed as against the will. This conclusion cannot be sustained. The frame of the bill, the character of the parties, and the terms of the decree and consent on which it was founded, do not conform to what is essential to constitute either a formal or substantial act of election under the Benson deed, but, on the contrary, exhibit a clear intent to perpetuate the provisions made by the will, so far as the rights of objecting parties would permit.

The bill seeks nothing further than compensation to Harvey and wife, for an alleged inequality in the dispositions under the will as compared with the rights intended to be conferred by the Benson deed. It alleges that the complainants were "unwilling to disturb the family arrangements contemplated by the said John D. Brown, further than is necessary to secure their just rights; and in order to promote peace and harmony in the family they had filed this bill, in order, in an amicable manner, to adjust the rights of the complainants in relation to those members of the family of the said John D. Brown with whom they might come in conflict." They ask that the house and lot in Assembly street may be sold, and the proceeds of sale invested in accordance with the will of J. D. Brown, and that they may have "such portion of the settled estate allotted to them, by sale or otherwise, as may equalize them with the other children of the said John D. Brown, and be a fair equivalent for the property secured by the said trust deed, which they thus agree to give up."

Considering the bill in connection with the fact that the only parties defendant to it were the widow of J. D. Brown, and Sarah P. and her husband, and with the additional fact that the decree was based upon a consent of such defendants, it is clear that the proceeding is to be regarded as an application to the Court to sanction, by

its decree, a compromise made between these parties, by which Harvey and wife were to receive a pecuniary compensation, in lieu of the interest intended under the Benson deed, the provisions of the will to stand in all other respects.

Certain facts bear strongly on this conclusion. The bill sets up the existence of a claim based on the will. The house and lot in Assembly street, as appears by the bill, was held by J. D. Brown on like trusts as those affecting the land in suit, yet the decree assures to Harvey and wife this house and lot, as their individual property, in the precise manner in which, according to the will, they were to hold it. They could not hold it under any other title as their several estate; not under the original deed of trust to Brown, because all the children of Brown were entitled under that trust; nor under the decree considered as a proceeding based upon such trust, for all the children of Brown are not parties to the bill. The very clause of the decree that attempts to secure the house and lot in Assembly street to Harvey and wife, assumes in terms to confirm in them as well " all interest secured to them by the will of John D. Brown."

The presumption is that the value of the life estate of Sarah P. was the inducement to pay to Mrs. Harvey the amount agreed to be paid to the latter, by way of equalization, and the payment of that sum, in order to a compromise of the claim of Harvey and wife, and to prevent the disturbance of the arrangements of the will, cannot prejudice the rights of the other parties entitled to claim under the will, who, on like grounds, must be presumed to have received only their fair and equal proportion of the estate.

The foregoing view disposes of all the questions material to the present aspect of the case. The conclusion of the Circuit Court, that the decree and proceedings in the Harvey case amounted to an election under the Benson deed, binding on all parties deriving their claims under the will, cannot be sustained; there should, therefore, be a new trial.

*Moses*, C. J., and *Wright*, A. J., concurred.